IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SANJAY NANDA (01) | NO. 3:19-CR-00318-K |

## GOVERNMENT OPPOSITION TO DEFENDANT'S MOTION TO AMEND CONDITIONS OF RELEASE

The defendant, Sanjay Nanda, pleaded guilty several months ago to a one-count Information charging him with embezzling almost $6,000,000 over a four-year period from his employer at the time, Sabre GLBL, Inc.  Nanda now moves the Court to amend his conditions of release to allow him to travel outside the United States, specifically, to India, where he and his family reside, for a period of six weeks to deal with family matters.  While the government recognizes that requiring Nanda to remain in the United States pending sentencing has and likely will continue to impose hardships on Nanda and his family, the government respectfully submits that they are the consequences of Nanda's voluntary decision to leave the United States while he was being investigated.  Because the government has no practical recourse to obtain Nanda's return in a timely manner if he fails to return on his own, the government requests the Court deny the motion.

## FACTUAL BACKGROUND

Between July 2010 and October 2015, Nanda was employed by Sabre GLBL, Inc. ("Sabre") as the Senior Vice-President for Airline Solutions. Beginning in late 2011, and continuing through the month he left Sabre's employ, Nanda knowing and intentionally engaged in a scheme to embezzle funds from his employer. By the time he left Sabre, Nanda had stolen over $5,900,000 from the company. *See* Presentence Investigation Report ("PSR"), Dkt. No. 24-1 ¶ 14, at 5.

Soon after Nanda resigned, Sabre discovered the embezzlement and brought a civil suit against him to recover the embezzled funds. Nanda eventually entered into a settlement with Sabre, *see id.*, and in or around mid-2016, moved back to India with his wife.

In January 2019, apparently aware that he could be the subject of a criminal investigation, Nanda traveled to the United States for business. *See* Defendant's Motion to Amend Conditions of Release (hereinafter "Motion to Amend"), Dkt. No. 27-1, at 1 ("Knowing that the criminal matter was separate and still 'in play' [Nanda] voluntarily traveled to the United States . . . ."). As far as the government is aware, before he traveled to the United States Nanda did not, either directly or through a third party such as counsel, contact any authorities in the United States to determine if charges had been filed or if he would be allowed to leave once he entered the country.

On January 26, 2019, when he entered the country at John F. Kennedy International Airport in the Eastern District of New York, Nanda was arrested on a criminal complaint issued by this Court the preceding day, charging Nanda with knowingly devising and executing a wire fraud scheme ro embezzle funds from Sabre, in violation of 18 U.S.C. § 1343.  Dkt. No 3, at 3-5 (Affidavit of FBI Special Agent Jordan Anderson in Support of Removal to the Northern District of Texas).  Later that same day, Nanda appeared before a Magistrate Judge in the Eastern District of New York, who ordered Nanda released pending trial subject to several terms and conditions.  These release conditions included the requirements that Nanda reside with his brother in New Jersey, surrender his passport, restrict any travel to New York State, New Jersey, and the Northern District of Texas, and that Nanda's brother post a $350,000 appearance bond.  *See* Order Setting Conditions of Release and Appearance Bond, Dkt. No. 3, at 8 § I (Release Orders); *id.* at 8 § II at ¶¶ 1, 4, and 6; *see also* Defendant's Motion, Dkt. No. 27-7, Exhibit F (surety bond).

On July 1, 2019, the government filed a felony Information charging Nanda with one count of wire fraud.  Dkt. No. 10.  On August 6, 2019, pursuant to a written plea agreement, Nanda pleaded guilty to the one-count Information before this Court.  Dkt. No. 17.  Later that same day, this Court issued a report recommending that the District Court accept Nanda's plea, Dkt. No. 19, and on August 21, 2019, United States District Judge Kinkeade accepted the plea and adjudged Nanda guilty.  Dkt. No. 21.

## ARGUMENT

As a general rule, a defendant who has been found guilty of an offense and who is awaiting imposition of a sentence should be detained unless the judicial officer finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger to any other person or the community if released. 18 U.S.C. § 3143(a). Following Nanda's plea of guilty, the government did not object to his continued release subject to the terms and conditions imposed at his initial appearance. Those conditions restricted Nanda's travel to three enumerated States and required that he surrender his passports, ensuring that he could not (lawfully) leave the United States. *See* Dkt. No. 3, at 4 ¶ 2 (Nanda carrying three U.S. passports when he entered the country). Without a valid passport, and taking into account his cooperation and apparent sincere remorse, the government believed that Nanda did not pose a significant risk of flight.

That calculus changes, however, if Nanda is allowed to return to India, his country of origin. Nanda has been living in India for the last several years with his wife and child; his elderly parents, at least one of whom suffers from a serious medical condition, reside there as well. *See* Motion to Amend, at 2. He also has been gainfully employed in India since he returned, see PSR ¶¶ 50-52, and given his impressive education and employment history it seems reasonable to suppose that he would not have a problem resuming gainful employment. Thus, there are immediate and compelling attractions in India that will persistently serve as inducements to stay, and insistently remind him what he will forfeit by returning to the United States to face imprisonment. Given the obvious

compelling nature of these factors, allowing Nanda to leave the United States and return to his country of origin and present residence substantially increases the risk he will not to appear for sentencing as ordered.

Additionally, and critically, once Nanda is in India the ability of the United States government to enforce the Court's order and re-obtain jurisdiction over his person is severely limited. If Nanda remains in India beyond the time permitted by the Court, the only lawful recourse the government has is to file an extradition request that India. In fact, India does have a modern dual-criminality extradition treaty with the United States, under Indian nationals can be extradited. *See* Extradition Treaty Between the Government of the United States of America and the Government of the Republic of India, June 25, 1997, S. Treaty Doc. No. 105-30 (1997). But the experience of the Department of Justice is that the extradition of Indian nationals from India occurs, if it occurs, only after an extremely lengthy process. Based on conversations with the attorney in the Criminal Division Office of International Affairs responsible for extradition matters with India, undersigned counsel understands that the backlog in the Indian courts is so severe that few extradition requests have been adjudicated, and that the last individual extradited back to the United States from India was returned some 15 years after the government filed the extradition request. Telephone Interview of Mark Tellitocci, Attorney-Advisor, U.S. Department of Justice, Office of International Affairs (October 25, 2019). This problematic process not only renders the government's ability

to enforce the Court's order all but illusory, but it serves as another inducement for Nanda to ignore the Court's order and remain in India.

In summary, the government is not indifferent to the hardships that Mr. Nanda's release conditions have imposed on his family to date and that will result if the Court denies the instant motion. But these hardships are the direct consequences of his sustained, criminal course of conduct, one of which is the government's significant interest in ensuring that he remains within this Court's jurisdiction and is held fully accountable for his actions.

    Respectfully submitted,
ERIN NEALY COX
UNITED STATES ATTORNEY

 /s/   Paul Yanowitch
PAUL YANOWITCH
Illinois State Bar No. 618826
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8618
Facsimile: 214.659.8812
Email: paul.yanowitch@usdoj.gov

**Gov't Opposition to Defendant's Motion
to Amend Conditions of Release – p. 6**

## CERTIFICATE OF SERVICE

This is to certify that on October 28, 2019, a true and correct copy of the Government's Opposition to Defendant's Motion to Amend Release Conditions was served on counsel for the defendant, Robert R. Smith, by means of the United States District Court for the Northern District of Texas Electronic Case Filing System.

/s/  Paul Yanowitch
PAUL YANOWITCH
Assistant United States Attorney